# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Tampa Division

**JACOB PERRY,**                                    CASE NO.:

    *Plaintiff,*

**v.**

**JPMORGAN CHASE BANK, N.A.,
TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC.
and EQUIFAX INFORMATION
SERVICES LLC,**

    *Defendants,*

                              /

## PLAINTIFF'S COMPLAINT
### JURY DEMAND

1.    Plaintiff, Jacob Perry (hereinafter "Plaintiff" or "Mr. Perry"), brings this action against Defendants JPMorgan Chase Bank, N.A. ("Chase"), Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian") and Equifax Information Services LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

2.    Plaintiff further alleges violation of the Florida Consumer Collection Practices act, Florida Statute §559.72 *et. seq*. (hereinafter "FCCPA") against Chase.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.      Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

5.      Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

6.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Hillsborough County, Florida.

## **PARTIES**

7.      Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Hillsborough County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c) and Florida Statute §559.55(8).

8.      Defendant Chase is a national bank registered to conduct business in the State of Florida with a principal place of business located at 383 Madison Avenue, New York, NY 10179.

9.      Defendant Chase is a "debt collector" within the meaning of Florida Statute §559.55(7).

10.     Chase uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the three national consumer reporting agencies, Trans Union, Equifax, and Experian (collectively "credit reporting agencies" or "CRAs").

11.     These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

12.     Defendant Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

13.     Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

14.     Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK

### THE FCRA

15.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

16.     Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

17.     The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

18.     Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies were under no obligation to treat an identity theft claim any different than a regular dispute.

19.     The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer

identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

20.    A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B).  See 15 U.S.C. §§ 1681c-2(c)(2).

21.    In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

22.    "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was

fraudulent." *Osada v. Experian Info. Solutions, Inc.,* No. 11-C-2856, 2012 WL 1050067, at \*3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

23.    The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

24.    The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

25.    In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

26.    The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along

with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

27.     In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C.S. § 1681i(a)(4).

28.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

29.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

30.     "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes

that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

31.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

32.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

33.     If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)).

34.     If the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. *See* 15 U.S.C. § 1681n(a).

35.     A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

36.     Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is

used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

a.    credit or insurance to be used primarily for personal, family, or household purposes;

b.    employment purposes; or

c.    any other purpose authorized under section 1681b of this title.

*See* 15 U.S.C. § 1681a(d)(1).

37.    The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

**The FCCPA**

38.    The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

39.    The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." *See* Fla. Stat. § 559.72(9).

40.    "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." *See* Fla. Stat. §559.77(2).

41.     As a consumer, Mr. Perry has a private right of action against Chase pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

## FACTUAL ALLEGATIONS

42.     Mr. Perry is a victim of identity theft.

43.     In February 2023, Mr. Perry reviewed his credit reports after noticing that his credit score decreased and discovered a fraudulent Chase credit card account, with the account number ending in 1826, on his credit reports that he did not open or authorize anyone else to open using his personal identifying information ("Chase Account").

44.     Mr. Perry then began contacting Chase, identified himself as a victim of identity theft and informed Chase that the Chase Account was opened fraudulently.

45.     Additionally, Mr. Perry contacted the credit reporting agencies identifying himself as a victim of identity theft, placing initial fraud alerts on his credit reports and informing the credit reporting agencies that the Chase Account is fraudulent.

46.     On July 5, 2023, Mr. Perry also filed a police report with the Hillsborough County Sheriff's office reporting the identity theft committed against him.

47.     On January 20, 2024, Plaintiff completed the Federal Trade Commission fraud affidavit regarding the Chase Account ("January FTC Affidavit").

48.     On or about March 1, 2024, Mr. Perry mailed written dispute letters to Trans Union, Equifax and Experian with a courtesy copy of each letter also mailed to Chase disputing the fraudulent Chase Account and other fraudulent personal identifying information and included a copy of the January FTC Affidavit ("March 2024 Dispute").

49.     Upon information and belief, one or more of the credit reporting agencies also forwarded Mr. Perry's March 2024 Dispute to Chase.

50.     Defendant Trans Union did not respond to Mr. Perry's March 2024 Dispute and continued to report the Chase Account and fraudulent personal identifying information on Plaintiff's credit report.

51.     Defendant Equifax sent Mr. Perry correspondence dated March 14, 2024 informing him that it would not block the fraudulent information he was disputing.

52.     Defendant Experian conducted an investigation into Mr. Perry's March 2024 Dispute and allegedly verified that the fraudulent Chase Account and personal identifying information was reported accurately.

53.     On or about May 28, 2024, Mr. Perry again mailed written dispute letters to Trans Union, Equifax and Experian with a courtesy copy of each letter also mailed to Chase disputing the fraudulent Chase Account and other fraudulent personal identifying information and included a copy of the January FTC Affidavit ("May 2024 Dispute").

54.     Upon information and belief, one or more of the credit reporting agencies also forwarded Mr. Perry's May 2024 Dispute to Chase.

55.     Defendant Trans Union sent Mr. Perry investigation results dated June 8, 2024 indicating that it had conducted an investigation and deleted the fraudulent Chase Account and personal identifying information he was disputing in his May 2024 Dispute.

56.     Defendant Equifax sent Mr. Perry correspondence dated June 9, 2024 informing him that it would not block the fraudulent information he was disputing.

57.     Subsequently, Defendants Trans Union and Equifax each sent Mr. Perry investigation results dates July 4, 2024 stating that, despite previously deleting the Chase Account in response to his disputes, they were reinserting the Chase Account into his credit files.

58.     Defendant Experian sent Mr. Perry investigation results dated June 26, 2024 indicating it had conducted an investigation and deleted the fraudulent Chase Account and fraudulent inquiries.

59.     However, despite representing to Mr. Perry in the June 26, 2024 investigation results that it had deleted the fraudulent Chase Account, Experian continued to include the account in Mr. Perry's credit file.

60.     Experian also failed to investigate an address that Mr. Perry was disputing as fraudulent and continued to include the address in Mr. Perry's credit file.

61.     On or about September 5, 2024, Mr. Perry again mailed written dispute letters to Trans Union, Equifax and Experian with a courtesy copy of each letter also mailed to Chase disputing the fraudulent Chase Account and included a copy of the January FTC Affidavit, Hillsborough County police report and a utility bill as a proof of address ("September 2024 Dispute").

62.     Upon information and belief, one or more of the credit reporting agencies also forwarded Mr. Perry's September 2024 Dispute to Chase.

63.     Defendant Trans Union sent Mr. Perry investigation results dated September 13, 2024 indicating it had deleted the fraudulent Chase Account.

64.    Shortly thereafter, Trans Union sent Mr. Perry investigation results dated September 21, 2024 stating that it was reinserting the Chase Account into his credit files.

65.    Furthermore, Defendants Trans Union and Chase failed to include in Mr. Perry's credit file that he was disputing the fraudulent Chase Account.

66.    Defendant Equifax sent Mr. Perry correspondence dated September 17, 2024 informing him that it would not block the fraudulent information he was disputing.

67.    Shortly thereafter, Defendants Equifax also sent Mr. Perry investigation results dated September 23, 2024 stating that, despite previously deleting the Chase Account in response to his disputes, it was reinserting the Chase Account into his credit files.

68.    Defendant Experian sent Mr. Perry correspondence dated September 16, 2024 that it was conducting an investigation into his September 2024 Dispute and that the investigation results will be available October 10, 2024.

69.    Defendant Experian did not provide Mr. Perry with the results of its investigation.

70.    Despite Plaintiff's exhaustive efforts to date, Defendants Trans Union, Equifax, Experian and Chase continue to include the fraudulent Chase Account in Mr. Perry's credit files.

71.    Experian further continues to include fraudulent personal identifying information and inquiries in Plaintiff's credit file.

72.    Defendants' derogatory and inaccurate reporting of the Chase Account on Plaintiff's credit reports negatively reflects upon Mr. Perry's financial obligations, credit score and credit worthiness to existing and potential creditors.

73.    On or about August 21, 2024, Mr. Perry's was denied a credit card account with USAA based on information in his Experian credit report which included the fraudulent Chase Account.

74.    Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.,* 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept.

30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

## COUNT I – VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST CHASE

75.    Plaintiff incorporates by reference paragraphs 2, 4 – 11, 38 – 50, 52 – 55, 57 – 59, 61 – 65, 67, 70 and 72 – 74 as if fully stated herein.

76.    At all relevant times to this action, Chase is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

77.    Chase violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate

or asserting the existence of some other legal right when Defendant knew that right did not exist.

78.   Specifically, Chase continues to report the fraudulent Chase Account on Plaintiff's credit reports after being placed on notice in early 2023 that the account is fraudulent, and Plaintiff is not responsible for the account.

79.   "Any person who fails to comply with any provision of   §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." *See* Fla. Stat. §559.77(2) (emphasis added).

80.   As a result of Defendant's violations, Plaintiff suffered damages including but not limited to credit denials, emotional distress and time spent addressing Defendant's erroneous credit reporting.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Chase in the form of actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees,

litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST CHASE

81.     Plaintiff incorporates by reference paragraphs 1, 3, 5 – 8, 10, 11, 15 – 17, 28 – 37, 42 – 50, 52 – 55, 57 – 59, 61 – 65, 67, 70 and 72 – 74 as if fully stated herein.

82.     Chase is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

83.     Chase violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's March 2024 Dispute, May 2024 Dispute and September 2024 Dispute when it failed to review all relevant information provided by the credit reporting agencies.

84.     As a result of Chase's violations of the FCRA, Plaintiff has been damaged.

85.     Plaintiff's damages include damages for mental and emotional distress associated with the Chase account remaining on his credit report(s) following his disputes, credit denials, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

86.     Chase negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

87.     Additionally, Chase committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

88.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Chase in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST TRANS UNION

89.     Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 12, 15 – 28, 31 – 37, 42, 43, 45 – 50, 53 – 55, 57, 61 – 65, 70 and 72 as if fully stated herein.

90.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

91.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

92.     During the relevant timeframe, Trans Union received Plaintiff's March 2024 Dispute which requested a block of the fraudulent Chase Account.

93.     Plaintiff disputed the Chase Account on his Trans Union credit report, identified himself, advised Trans Union of the Chase Account being opened

fraudulently, furnished Trans Union with a copy of the Federal Trade Commission identity theft report, and requested that Trans Union block the fraudulent information.

94.    Rather than block the fraudulent information, Trans Union negligently and willfully disregarded its obligations under the FCRA by refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

95.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

96.    Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

97.    As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law,

and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST TRANS UNION

98.     Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 12, 15 – 28, 31 – 37, 42, 43, 45 – 50, 53 – 55, 57, 61 – 65, 70 and 72 as if fully stated herein.

99.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

100.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

101.    During the relevant time frame, Trans Union received Plaintiff's March 2024 Dispute, May 2024 Dispute and September 2024 Dispute which requested that the fraudulent Chase Account be removed from his credit file.

102.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

103.    Additionally, Trans Union unreasonably relied on information provided by Chase, when readily verifiable information was provided by Plaintiff in the disputes placing Trans Union on notice that Chase's credit information was inaccurate and unreliable.

104.   Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

105.   Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

106.   As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## <u>COUNT V - VIOLATIONS OF 15 U.S.C. §1681e(b)</u><br><u>AGAINST TRANS UNION</u>

107.   Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 12, 15 – 28, 31 – 37, 42, 43, 45 – 50, 53 – 55, 57, 61 – 65, 70 and 72 as if fully stated herein.

108.   At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

109.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

110.   Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

111.   After Plaintiff's March 2024 Dispute, May 2024 Dispute and September 2024 Dispute, Trans Union was placed on notice that the Chase Account is fraudulent, yet Trans Union continues to include the fraudulent accounts in Plaintiff's credit file.

112.   Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

113.   In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

114.   As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VI – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST EQUIFAX

115.   Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 12, 15 – 28, 31 – 37, 42, 43, 45, 46 – 49, 51, 53 – 54, 56, 57, 61 – 62, 66 – 67, 70 and 72 as if fully stated herein.

116.   At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

117.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

118.   During the relevant timeframe, Equifax received Plaintiff's March 2024 Dispute which requested a block of the fraudulent Chase Account.

119.   Plaintiff disputed the Chase Account on his Equifax credit report, identified himself, advised Equifax of the Chase Account being fraudulent, furnished Equifax with a copy of the Federal Trade Commission identity theft report, and requested that Equifax block the fraudulent information.

120.    Rather than block the fraudulent information, Equifax negligently and willfully disregarded its obligations under the FCRA by refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

121.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

122.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

123.    As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## <u>COUNT VII - VIOLATIONS OF 15 U.S.C. §1681i</u>
## <u>AGAINST EQUIFAX</u>

124.   Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 12, 15 – 28, 31 – 37, 42, 43, 45, 46 – 49, 51, 53 – 54, 56, 57, 61 – 62, 66 – 67, 70 and 72 as if fully stated herein.

125.   At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

126.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

127.   During the relevant time frame, Equifax received Plaintiff's March 2024 Dispute, May 2024 Dispute and September 2024 Dispute which requested that the fraudulent Chase Account be removed from his credit file.

128.   Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

129.   Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

130.   Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

131.   As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EQUIFAX

132.   Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 12, 15 – 28, 31 – 37, 42, 43, 45, 46 – 49, 51, 53 – 54, 56, 57, 61 – 62, 66 – 67, 70 and 72 as if fully stated herein.

133.   At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

134.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

135.   Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the

preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

136.    After Plaintiff's March 2024 Dispute, May 2024 Dispute and September 2024 Dispute, Equifax was placed on notice that the Chase Account is fraudulent, yet Equifax continues to include the fraudulent account in Plaintiff's credit file.

137.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

138.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

139.    As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law,

and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IX – VIOLATIONS OF 15 U.S.C. 1681c-2
## AGAINST EXPERIAN

140.   Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 13, 15 – 28, 31 – 37, 42, 43, 45, 46 – 49, 52 – 54, 58 – 62 and 68 – 74 as if fully stated herein.

141.   At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

142.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

143.   During the relevant timeframe, Experian received Plaintiff's March 2024 Dispute, May 2024 Dispute and September 2024 Dispute which requested a block of the fraudulent Chase Account.

144.   Plaintiff disputed the Chase Account on his Experian credit report, identified himself, advised Experian of the Chase Account being fraudulent, furnished Experian with a copy of the Federal Trade Commission identity theft report and requested that Experian block the fraudulent information.

145.   Rather than block the fraudulent information, Experian negligently and willfully disregarded its obligations under the FCRA by refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

146.   Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

147.   Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

148.   As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

149.   Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 13, 15 – 28, 31 – 37, 42, 43, 45, 46 – 49, 52 – 54, 58 – 62 and 68 – 74 as if fully stated herein.

150.   At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

151.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

152.   During the relevant time frame, Experian received Plaintiff's March 2024 Dispute, May 2024 Dispute and September 2024 Dispute which requested that the fraudulent Chase Account be removed from his credit file.

153.   Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

154.   Additionally, Experian unreasonably relied on information provided by Chase, when readily verifiable information was provided by Plaintiff in the disputes placing Experian on notice that Chase's credit information was inaccurate and unreliable.

155.   Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

156.   Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

157.   As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to

purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XI - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EXPERIAN

158.   Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 13, 15 – 28, 31 – 37, 42, 43, 45, 46 – 49, 52 – 54, 58 – 62 and 68 – 74 as if fully stated herein.

159.   At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

160.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

161.   Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

162.   After Plaintiff's March 2024 Dispute, May 2024 Dispute and September 2024 Dispute, Experian was placed on notice that the Chase Account is

fraudulent, yet Experian continues to include the fraudulent account in Plaintiff's credit file.

163.   Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

164.   In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

165.   As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## **JURY DEMAND**

166.    Plaintiff demands a trial by jury on all issues so triable.


Dated: November 5, 2024              *Respectfully submitted,*

                                     **SHARMIN & SHARMIN, P.A.**

                                     */s/ Eiman Sharmin*
                                     Eiman Sharmin, Esq.
                                     eiman@sharminlaw.com
                                     FBN: 716391
                                     830 North Federal Highway
                                     Lake Worth, FL 33460
                                     Main: 561-655-3925
                                     Fax: (844) 921-1022

                                     *Counsel for Plaintiff*